263 P.3d 1178 (2011)
2011 UT App 322
STATE of Utah, in the interest of R.S., a person under eighteen years of age.
R.R.L., Appellant,
v.
State of Utah, Appellee.
No. 20110641-CA.
Court of Appeals of Utah.
September 22, 2011.
Colleen K. Coebergh, Salt Lake City, for Appellant.
Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before Judges McHUGH, ORME, and THORNE.

*1179 DECISION
PER CURIAM.
¶ 1 R.R.L. (Father) appeals the termination of his parental rights to R.S. Father contends that the juvenile court erred in terminating his parental rights because his conduct did not fall below the minimum standard of parental fitness.
¶ 2 R.S. was removed from her parents' home in January 2011 after execution of a search warrant that revealed drugs and drug paraphernalia. Father entered admissions to the amended allegations of the State's petition, resulting in an adjudication of R.S. as neglected by Father. On March 2, 2011, Father stipulated that no reunification services should be provided to him and that the case should proceed to a permanency determination. Thus, the juvenile court set a primary permanency goal of adoption.
¶ 3 At the time of the termination trial in May 2011, Father was incarcerated on pending felony drug charges but had not been convicted. He testified that he loved R.S. and wished to be a parent to her and that he had relatives who could care for R.S. while he was incarcerated. The juvenile court admitted evidence of Father's criminal record and orders from a previous juvenile court case that resulted in the termination of Father's parental rights to an older sibling of R.S. Father had been incarcerated in the Salt Lake Metro Jail for all but two weeks of the time following R.S.'s removal. The caseworker from the Division of Child and Family Services testified that she sent letters in English to Father while he was in jail, updating him on the case, providing her contact information, and including stamped, self-addressed envelopes. This was the standard procedure in cases where no reunification services have been ordered for an incarcerated parent. The caseworker did not receive any contact from Father.
¶ 4 Shortly before the termination trial, there had been a child welfare referral based upon a suggestion that the twelve-year-old son in the foster home had engaged in inappropriate touching of R.S. After an investigation, the allegation was found to be unsupported. The foster family had implemented a safety plan including more extensive supervision. Both the caseworker and the foster father testified that R.S. had integrated into the foster family, which included her biological sibling, had overcome the trauma associated with her removal, and was progressing in her development. The foster family wished to adopt her.
¶ 5 The juvenile court concluded that Father had substantially neglected, wilfully refused, or been unable or unwilling to remedy the circumstances that led to R.S. being placed in out-of-home care and that there was a substantial likelihood that Father would not be capable of providing proper or effective parental care in the near future, see Utah Code Ann. § 78A-6-507(1)(d) (2008). The juvenile court further concluded that Father's habitual use of controlled substances had rendered him unable to care for his child and supported a conclusion that he was an unfit or incompetent parent, see id. § 78A-6-507(1)(c). The court concluded that Father had neglected R.S. and he had made only token efforts to support or communicate with his child, to prevent neglect, or to avoid being unfit, see id. § 78A-6-507(1)(f). Finally, the court found that it would be in the child's best interests to terminate Father's parental rights and allow her to be adopted.
¶ 6 Father does not challenge any of the juvenile court's findings of fact supporting termination of parental rights. He instead argues that he should be allowed additional time to resolve his pending criminal charges, obtain release from incarceration, and have an opportunity to parent his child. He also raises the unsupported allegations against a child in the foster home as evidence that his parental rights should not be terminated. The juvenile court made no findings regarding these allegations, and Father did not request findings or make an argument in the juvenile court on that basis.
¶ 7 Father does not undertake any specific analysis of the separate grounds for termination found by the juvenile court to demonstrate a basis for his conclusory claim that the court erred in finding that grounds for termination existed. The juvenile court "may terminate all parental rights with respect *1180 to a parent if the court finds any one of" the grounds enumerated in Utah Code section 78A-6-507. See id. § 78A-6-507(1). We will overturn the juvenile court's decision "only if it either failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." In re B.R., 2007 UT 82, ¶ 12, 171 P.3d 435. "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." Id. Based upon the lack of any analysis of the grounds for termination of parental rights demonstrating that the juvenile court committed error, we affirm the juvenile court's decision.